for 12-1167 Injeti v. United States Citizenship and Immigration Services. Mr. O'Toole, whenever you're ready, sir. Morning. Morning. May it please the Court, I'm with Karen Burke and Kelly Dubois of my office. I'm Jeffrey O'Toole. May it please the Court, before you is the case of Lakshmi Injeti, a relatively uneducated woman from India who never made it out of the fifth grade and has been told by the district court that she can never become a citizen and she risks removal because she included one mistake on two of her forms and even though she went to her interview and truthfully corrected those mistakes, explained how they happened, she was held to be not naturalizable. What do you, I take it, one of your principal concerns is I think you just indicated, the way you put it, you said the district court has made a finding that she could never prove her good character. Right. And I take it that's in a way the principal concern you have in this appeal, is that right? Well, we have a number of concerns, that's certainly one of the concerns. Because if I recall the law and understand the law, which is not certain, in these circumstances, she gets to come back, I mean an applicant gets to come back after three years, is that right? When a naturalization application has been turned down, am I correct? I think you're mixing it up a little bit. Okay, help me out. The way it works is it's a bifurcated, it's a two-stage system. When one becomes admitted, become admissible. Yeah, I understand that, I understand that. And I understand you've got a problem here even on the lawful permanent resident. But the court found, the court made a finding that at her, or the immigration service made a finding that she would not be naturalizable. She couldn't prove her good character. So she was not admitted lawfully. So if you're not admitted lawfully from the very beginning, that's a label you keep forever. So Ms. Njeti was not admitted, the court found. Therefore, she can wait three years or five years or longer, and she's always going to be having been not lawfully admitted. That's because you determined that she had been a bigamist. Well it's difficult to find what the court found. The court said it's an interesting question whether she's a bigamist. I don't need to make that finding. So he doesn't make the judge... What was the determination that she had not been here lawfully in the first instance? Which is accorded, that accorded type language in there allows that to go back even if they granted you this lawful permanent residency. If something is found that would have prohibited you, then that becomes a basis saying that you don't have it. And I thought it was because the court says as a bigamist, you could not have gotten this LPR status. It's difficult from the record to make that determination. I don't think if you look at there's 136... If it's not the bigamist, what would it be? What did the trial judge go on? Judge Titus jumped right into materiality. He found that there was a material issue because there was a mistake about her marital status. So he went right to something called, and I'll be happy to lay it out for the court, but Judge Titus found that there was a material issue. I understand you don't want to use the word, but he found it was a material misrepresentation. Well he didn't find that. He didn't find a misrepresentation. In fact, he later says, I don't need to find that. He specifically says, I don't need to get there because it was material. And if you look at the statute... Let me ask you that. Is that correct? Is that interpretation of the lack of intent correct? Our interpretation is that it is not correct. Okay. That in order to get to materiality, you have to have a fraud or a willful misrepresentation. And that's generally the law, but what was he relying on to carve out an exception in this case, if you know? What would I rely on to carve out an exception? No, what was the district judge relying on? I think, with all fairness, I think the court was confused. I think the government confused the judge, and I think the judge stayed confused. He gave his eight-page opinion immediately after we argued, and he conflated and mixed up all the different tests. There's a very simple way this has to happen, and he jumped from one concept to another concept. And he made those jumps while giving the government the opportunity. There were unresolved factual disputes, which should have been either not resolved or resolved by hearings. And the court didn't do that. The court made findings that the government asked him to find, and then made a ruling, two rulings, that she was not here lawfully from the beginning, number one. And number two, she was not a good moral character. She couldn't naturalize. Well, give just Titus a benefit of the doubt. It appears that what he was relying on was case law from the BIA interpreting this issue of fraud as a finding either that the alien had not obtained permanent resident status by fraud or had otherwise not been entitled to it. That sort of broad catch-all that suggests that, whether intentional or not, if an alien is not entitled to lawful status, then that's the end of it. Why is that wrong? Well, if the court found fraud, if the court did find fraud, we submit that, on the record, he could not have found fraud. And if he'd made that finding, it was an error because... Well, I don't think he did. I think what he said was, I don't need to find an intent to deceive because of case law. What he found was that there was a structural problem. He went back to the very beginning and said, she made a mistake. On those forms, which my partner is taking credit for making a mistake, it doesn't say that she was married previously, even though with those papers that she filed was her marriage license, which called herself a widow. So I think there was no evidence of intent by her to fool anybody. What about the fraudulent death certificate? Well, you can't... If this were a different setting... A strike fraudulent. There you go. What about the disputed death certificate? That's all it is. It's a disputed death certificate. There's no evidence. In order for that to be in order to her detriment, she has to know that it was a fraudulent document. There's not a single shred of evidence on this record that she knew that it was fraud. And he doesn't know if it was a fraud. All we know was it wasn't... He being the government lawyer... Counsel for the government. And the INS did two years of investigation, and they came across this marriage... This death certificate, and all they can say is that it was not registered properly. That there was an irregularity in its filing. There's two problems with that. It doesn't call it a fraudulent document, number one. And number two, Miss Ingetti had no idea whether it was a fraudulent document or not. The record is clear that when she went to the lawyer first, she said, I was... I had a previous husband. The lawyer wrote down in his death certificate. He asked her to get the death certificate. The record is clear that she wrote a letter to India, asked someone to get the death certificate, and it came. There's no evidence on the record that there was any fraud involved. The court, whether or not the court found fraud, he certainly found that, like the government was asserting to the court, that there was something wrong with this poor woman. The only thing wrong with this poor woman is she didn't know English well enough to read the form. Her lawyer handed it to her, and she signed it. And there's no evidence anywhere that she was intending to do something wrong. Now, the court said it doesn't matter. There's a structural problem with her submitting a form that has a mistake on it. Now, that structural problem, if I can, is more like if somebody is a homosexual, or if one of the cases cited if somebody was really a grandparent and said that the immigrant person was their child, or if somebody had a structural problem with their application, meaning they didn't tell the INS that they had a drug conviction. So if they didn't tell that... I want to get back and make sure I understand the context of your argument. I think I'm following you in terms of the fraud part of it. But in order to meet the naturalization requirements, essentially the three components of it, and the only two that I see that issue here is the question, the judge says, you never should have had LPR status in the beginning, and you're not a good moral character. The LPR status business, it seems like to me, what's necessary to get that may be somewhat different than a good moral character. I know it overlaps, but really I thought that the judge was relying upon the fact that you had committed a crime of moral turpitude. And there are circuits that have said that bigamy is a crime of moral turpitude. And then when you get to that point, the question is, was the evidence, did it have enough evidence in which to be able to determine that? I think if you stop right there. But I don't want to, because I want to continue. I want to make sure that you answer my question. And you can come back and I want you to fully explain where you want to go with that. Thank you. So if you got that basis, then the way you then got to look at as to, well, is the evidence, is the bigamy established? And then what is the law that controls what is bigamy? And it seems to me, you got to go back to India. And then you got to make some determination that whether intent is a part of it. And that wasn't done here. Because I don't know if that was bigamy under these facts here of what was going on. If you're looking at it from the perspective that she's presented here, intent, if it is, is not. And knowledge is critical in some jurisdictions, some not. And we just don't know what India's perspective is on it. Perfect. Nicely said. But take me back where you want me to go. Before I got there. You went fine. You went exactly right. That if there was a finding. Doesn't mean your client's going to win. It means that there's some more evidence that needs to be taken in here. That's exactly right. And determined, at least insofar as the LPR status, if bigamy is the basis for the moral turpitude crime here. Because there's no conviction. There's none of that. But you don't need a conviction. But if it fits within it. But if you merely submit documents that seeing that you if you merely submit evidence that you've married a second time and it's something to show that your husband's still living, you still have to prove the intent on the second time to get in some jurisdictions, some don't. Right. The very simple way to say that is there's no evidence that she ever knew if she was married to two people at the same time. We're not saying she was, but there was no evidence anywhere that she would have known that the what the court John is getting to is the Section 212 of the Act. Any alien convicted or who admits having committed or who admits committing acts which constitute the essential elements of a crime of moral turpitude. Now, that would be make someone inadmissible if somebody was had committed or was admitted the elements of a crime of moral turpitude. But that didn't happen here. There's not a single fact on this entire record anywhere that there's a crime of moral turpitude, either convicted or admitted. You could get to the good moral character of it. And the court does here by saying, well, you submitted this false death certificate. But that, I guess, leads to a perjury charge. Well, again, the question is whether that's specific intent or what is that? It's different. Right. You're right. It's difficult to know and that's the only issue. The last four pages of Judge Titus's opinion, he sort of mixes them all up. But he does say she's guilty of some bad acts. Now, the bad acts, he finds, are that she and he cites Judge Chasnow's opinion in Itepe. It's the bad acts were not being true and correct in her application through 325 and 400. So he takes those as bad acts. He says in this law that bad acts has to be elevated to being a criminal act with intent. So if, and it's difficult to know from his opinion, if he found bigamy was an inadmissible situation here, he was wrong. Because there were no facts that established, you want to say something? No, I guess, obviously, it's difficult because he's pining from the bench. But I thought his initial point was she wasn't ever lawfully accorded LPR status because of the mistake, as you characterize it, in her application. Right. And as far as he's concerned, the case law indicates that she enters not an element, not a required element, never lawfully acquired status. That's the end of it. I think you're right. I think that's exactly what. What's wrong with that? Pardon me? What's wrong with that? What's wrong with that is that he's turning it on his head. He's saying the trial court built, the trial court just has built, and the government urges this court to find a wholly new, strict liability, zero tolerance rule. One inaccuracy would now suffice to make an applicant substantively noncompliant and not lawfully admitted, where before the test was, it required that the applicant either be factually ineligible or be to prove that she is eligible. So what Judge Titus said is absolute here. There's no more mistake involved. This is an absolute zero tolerance, strict liability event. And even though she came forward with an affidavit in the record, 260 in the record, the affidavit of David Rothwell saying that it was his mistake that he put it, that it said it's a structural problem, the judge says, I don't care. And he cited ITEBE. And ITEBE, Judge Chasnow said, the applicant has the absolute requirement to do it right. But we know in ITEBE, the client said, I've got a criminal record. I'm going to hide it. And my lawyer told me to hide it and only correct it at the interview. So Judge Titus took that case, which is dramatically different than our case, where there was fraud and there was an intent to lie to the immigration people and said, she must have been doing the same thing here. So what the judge does is takes every single case the government cites, every single one the government cites for the proposition that there need not be intent. Here's my problem. Go ahead. She signed the form under penalties of perjury. Are you telling, I guess this is what you're saying, that if the lawyer takes responsibility, then it never matters? Is that your argument? That a person can sign a form under penalties of perjury and whether the lawyer purposely, inadvertently, negligently includes a false statement of fact on the form that the applicant has no obligation under federal law to read the form? Before she signs under penalties of perjury? I'm really, I'm just having a real problem with the concept. I hear you. And the simple answer for this is that when that comes to an interview, eventually, a person has an ability to correct if there are any mistakes. For the first time, she found out that there was a, when she first signed the first one, she didn't speak English. Under penalties of perjury, it didn't matter to her whether it was a heartbreak or psoriasis. Those words didn't make any difference to her. She signed it, didn't speak English. Later, she had to learn English in order to become naturalized. And she did. How could she sign the form if she didn't speak English? Well, she knew how to sign her name and she hired, she hired a lawyer and she, I don't mean to be flippant at all, but I think the reality is this, this nice woman who didn't speak English, came from India, was brought over on an employment visa. The employer helped hire the lawyer. The forms were filled out. There was a typographical mistake put into that form. The client signed it and then later when was, and the same time she filed it, she said, I was previously married and now I'm a widow. So this court can find, and we submit the other court could have found, that there was absolutely no intent. There's not a single test. What your honor is saying is that, what the government is trying to say is that there's a strict liability, zero tolerance, no mistake possible test now. Are you going to the point that perjury is a specific intent crime? Yes. That intentionally signing a form does not compel the conclusion that you've intentionally defrauded the government. And we know it. That's all they see. It's, it's, it's mens rea. We know there's mens rea in perjury, period. We've all had cases, I've had clients, you've had cases where someone comes before you, if they didn't know that they were making, saying something wrong, it's not perjury. Perjury is a five-year felony that you get if you lie under oath for the purpose of making the other person believe what you're saying is true. So your, your point here, I guess, is that Judge Titus erred in deciding this case on summary judgment and that you want a bench trial for Judge Titus, where Judge Titus is actually going to have to listen to her testimony in his presence, where he can make a finding of fact as to her intent, her knowledge, the legitimacy of that death certificate. My summary couldn't be any better. That's my summary. Thank you. Is it Mr. Rubini? That's exactly right. Oh, good guess on my part. Good morning. First time. Thank you. Good morning. May it please the court, Errors Ravani on behalf of there are a number of things that my opponent raised in response to some of your questions that I'd like to get to, but initially I'd like to just begin by laying out the simple way to affirm this case. And maybe it would help to review what the, what Judge Titus actually did before we do that. Judge Titus made a simple finding. He made a finding that this particular individual was not lawfully accorded their status because they omitted material information, specifically the identity and fact of their first husband on their application for lawful permanent residence. And it didn't matter what her intent was, that that's the end of it. That's right. There is no intent requirement. This is a strict liability. Well, it's not so much a strict liability requirement. In this case, it may be viewed as such, but it's not a strict liability requirement for all times and all individuals and all circumstances. In this case, what happened was an individual who signed a document and I should point out, although it's not in the record that she did or did not speak English at the time, but she signed this document and this is filled out. And she, it's undisputed in the record that she did not read it after she signed it or after her attorney gave it to her to look at. She didn't read it. And that was a finding that Judge Titus made as well. But she omitted what is technically material information. And that's a legal question, not a factual question. The test for materiality is not would she have been excludable on the true facts had they been known at the time, but did she cut off a line of inquiry that could have, not would have, could have led to further information that would have led to the denial of that benefit. And there is a declaration in the record that was not disputed below from an individual by the name of Derek Warnke. He's an officer in the Baltimore District Office of Baltimore in Maryland at USCIS, the defendant. That's at page 352 and 353 of the joint appendix. And he writes, while plaintiff's marital status was not a condition of her eligibility for an employment-based visa, it was a material factor in determining her eligibility to adjust status to that of a lawful permanent resident. As her simultaneous marriage to both Raja Njeti and Muhammad Shaikh at the time of her adjustment application would have rendered her ineligible for adjustment. And then he cites two specific, two specific statutes, 8 USC 1182A6CI and 8 USC 1255A. So the latter one is a discretionary decision. What this declaration essentially says, if I had known this information, if I had been able to further explore whether this individual was in fact married to two individuals at the same time, I would have benefited exercising my discretion under the second statute. The plaintiff argues that there is an intent requirement here. And that would be true if we were in removal proceedings and the operative statute was 8 USC 1182A6CI, which requires a finding of willful broader misrepresentation. But this isn't a removal proceeding and the government doesn't bear the burden. Ms. Njeti bears the burden in every respect because she's seeking natural, she's seeking to become a U.S. I think the appellant made this point that she did include her marriage certificate listing her as a widow. Why was that, why was that not sufficient to engage in that inquiry that you're talking about? Well, that's certainly true, but I would point out, I think the relevant forms, the forms that should be the operative focus of the court's analysis here on whether these misrepresentations were material are the forms she signed under penalty of perjury. And that's the and the G325 biographic information. The government is entitled to rely on the fact that she signed those under penalty of perjury. And if I may refer the court to its earlier granted unpublished decision, SOTIC from 2007, where Judge Duncan writes, the applicant imposes a requirement on himself to be forthcoming by swearing under penalty of perjury that the information in the application is true as of the date of the interview. There that was a naturalization interview. Here it's filling out this I-485 form. Essentially what this plaintiff has done is entered into a contract representing that all the facts on that document are true. That should be enough for the government to rely on. If the government has to go down some rabbit hole looking at, is this document enough to put the government on notice that it should look for furthermore? Or is this document? She didn't give us the death certificate. I understand you to say that she, that it's undisputed in the record that she signed the form in blank. I wouldn't go so far as to say undisputed if she signed the form in blank. I would say it's undisputed that she testified she did not read it. And I just made a finding that. She did not read it. And counsel says she couldn't have read it because she doesn't understand English. Perhaps counsel should have read it to her. Not to put too much on counsel here, but here. Well, everything's on counsel here. This whole case turns on counsel. Right, right. Well, the theory to sum it up in a nutshell is an applicant can sign a document under penalty of perjury and walk away from that oath of perjury no matter what, so long as the counsel submits a declaration saying, sorry, that's what I'm hearing. And that can't be the law. And I'm having a hard time understanding why that should be the law. I mean, counsel said a lawyer can represent an applicant. And I don't know where it would end. Naturalization, adjustment of status, removability, asylum. I mean, where do you draw the line? If applicants under the immigration laws can simply march into a lawyer's office and sign a bunch of forms in blank or without reading them with the lawyer's knowledge without reading them, and then the lawyer takes responsibility for any errors that might show up in the form, I don't see how the law can operate that way. I, that's the government's position. And I think that's exactly right. It's a slippery slope. There are thousands and thousands of documents, applications, benefits, and so forth within the immigration system that need to be signed under penalty of perjury. If every single applicant for relief, and we're talking about hundreds of thousands of applicants in any given year, can simply put it on the lawyer's doorstep and walk away from the representations, that's chaos. And that's why the burden is on the applicant and the expectation, citing both from this court's earlier decision in Stoddard and just the general immigration laws and general rules of perjury, it's on the applicant to not omit material information. But would this case be different if, in fact, as a matter of objective fact, she actually was a widow? I mean, I don't know that that's been established as an objective fact at this point, because counsel for the appellant seemed to suggest that what I refer to as a fraudulent death certificate has not been shown to have been fraudulent. And so I guess it's the state of the record, we really don't know whether her first husband is dead or not? I think that the state of the record is this. Yeah, what's the state of the record? The state of the record is she married her second husband in 1991. 1991? According to her, under a belief that her first husband had died in India in 1988. Well, true, that's what she says. So what do we actually know as a matter of objective fact? We know that plaintiffs assert that the first husband died October 20th, 1988. We know she remarried on June 28th, 1991, a little over two and a half years after the fact. We know that they submitted a death certificate that was found after an investigation in contact with the registrar of records in the district where this individual allegedly died, that the death certificate was in fact registered to a woman with a completely different name. We don't know for a fact that the document was fraudulent, but we do know that we don't know if the guy's alive or dead. What we also know, and the government, this goes to the point raised when you were speaking. And if he's dead, we don't know when he died. We don't know anything about any of that. And it's really not the government's burden to put those facts into record. And frankly, plaintiff hasn't done so on summary judgment. But we also know, and the government submitted below, a declaration as to Indian law. And I think this goes to Judge Wynn's earlier question. There is no intent requirement under Indian law for bigamy. It seems to be a strict liability crime. You have to wait seven years from the date you claim your husband has passed away, or go to a court and get that first marriage nullified by showing them a valid death certificate. Neither of those things happened. That declaration wasn't disputed below. And it's true that this is a question of law. Indian law is not a question of fact. The court is free to look into it itself if it wishes to. So to get back to my question, if, for some reason, we were to send this back, and if, through further investigation, it could be established beyond a reasonable doubt to the satisfaction of everybody that the appellant's first husband did indeed die before she remarried, would this case be any different from the perspective of USCIS? Absolutely not. Because the issue is not whether, in fact, the husband is dead or not. The issue is whether facts were withheld or omitted, or whatever the phrase is we want to use here, that would have led to further investigation. That would have led to a number of facts that are currently in the record. That her second husband was also married to another individual, who was also in a bigamous relationship. To whether or not this death certificate was fraudulent or not. There are a number of things that would have led to the conclusion, as, again, the declaration states, I would have denied this benefit if I knew the facts as I knew them now. That's not in dispute. And if I may go to Judge Wynn's bigamy point again, you don't have to reach that issue. But if you do, it's a legal question. You don't have to send it back to looking at the legal question of whether this was a bigamous relationship under Indian law. We've put facts into the record as to that. You don't really have to reach the issue of good moral character. It really comes down to what she lawfully accorded status in 2001 when she failed to answer in the affirmative, yes, I had a first husband. Yes, his name was so-and-so, but I'm stating that he's dead. There is evidence in the record, although it didn't come up below, but this was not disputed, that she had the death certificate in her possession prior to the grant of legal permanent resident status. If her husband was, in fact, dead and she answered no, would that be incorrect? If her husband was, in fact, dead, but she answered no, I did not have a first husband? Yes. That would be no different. She had an obligation to tell us about the fact and identity of this husband. When this first came up, she brought that death certificate. She had, she just, I guess, not answered it. She had not answered it. It wasn't that she said no. She didn't check the box. She said none. Check the box, none. If we look at the form, there's a specific box on that form. At that point, that wasn't where the problem occurred. It was later, after this boyfriend of her daughter comes in and says that death certificate is fake. That's what raised the concern initially at USAS that, hold on, something's not quite right here. So the death certificate doesn't matter. Under your analysis, it doesn't matter. It's a simple checking of the box, none, in a case. I think that's right. If you find that she was, in fact- It wasn't. I mean, as long as, if that death certificate had been good, we probably wouldn't be here now. Probably not. Because the checking of that box and the presentation of the death certificate, they said, okay. Well, she had that death certificate. So the problem only arose after the insinuation or the suggestion about his boyfriend, who apparently had been jilted by the daughter or something had happened there. He then calls in and says, well, her mother has that death certificate is fake. Then you have this investigation, and then it arises from the fact that the death certificate is fake because if he's dead, checking none, I mean- It's not material. Yeah. I mean, he's dead. There are two separate- I mean, in terms of determining materiality, part of it is, what does it lead to? I mean, so what? He's dead. So what does she tell you, the husband and I? He's gone. All right. So that's where I understood, at least INS made a determination. If he's dead, okay, you check none. That's fine. And as long as he's supposed to be dead, you're okay. Boyfriend comes along, gets mad with daughter and says, mama's little death certificate there on dad, on her husband is not correct. That man is living. That triggers this chain of events, which ultimately leads to, wait a minute, this is false information, death certificate. They go back and they check, and there's some indication he's still living. And that's where it comes from. But you say this case shouldn't have been here the first instance. They should have never taken that death certificate. They should have just said none, death certificate, doesn't matter, that's false. And in the case, no LPR status. Is that where you're going? Not exactly. There are three, there's a number of issues in what you- What's the strict liability? What's the strictness of this that you are arguing? Just the mere misrepresentation in and of itself, all you need. Well, let me answer that by going back to what materiality is. So materiality is not the willful misrepresentation or omitting- What is the misrepresentation? It's not quite a misrepresentation, it's an omission, a material- What is the omission? The omission is the fact and identity of her first husband. And one might also further argue the omission of submitting the death certificate. So the death certificate matters not? No, but it could matter in the sense that if they had submitted that death certificate, they'd have a more plausible claim that in fact they put USCIS on notice and it wasn't a material omission. That takes me to the second part of where we're going with this. But I want to deal with that, that aspect of it. Just make sure I understand your position. If it's a material misrepresentation, she in fact had been married, doesn't matter whether or not he's dead, living, or whatever, he checks none, is that end of the case in your head? Signed under penalty of perjury, yes. But it wasn't. And that's why I'm saying it wasn't, because she in fact brought in what appeared to be a death certificate, they said okay. Seven years later. So we have to look at materiality at the moment. Whenever it was brought in, it was, I'm talking about the initial time. When she brings it in, she says okay. That's all right. She brought in this death certificate, your honor, in 2006 during removal proceedings, when apparently she thought to herself, oh, there's a problem here. Or oh, I might be removed. Oh, let's come clean and see what happens. That's an issue of fact. That's not an issue here right now, what her motive was. But the materiality analysis and whether she complied with the substantive immigration requirements doesn't look at what happened way after the fact she signed this form. It looked at what happened in 1999 when she signed this form. And she submitted her marriage certificate. You told me earlier that that didn't matter because the government isn't required to go searching around different documents to find the true set of facts. The government, yes, the government's not obligated, so far as I know, to go down the rabbit hole and look for a needle in a haystack. That's why you signed these documents under penalty of perjury. You tell us on the document that we give you where it specifically asks, have you been married before? Is your husband or wife deceased? It's a simple form. It streams right in the process. If the government has to go down that rabbit hole, the same problem arises if everyone can sign a form under penalty of perjury. So all you have to show is that she, in fact, signed the document. She intentionally signed the document. That's it? You don't have to further prove that she intentionally, her intent was to defraud? No. That's just not a requirement. That's that the case is recited in court. Just putting your signature along in the game. I just want to make sure that's your position. That's one way of putting it. I mean, if I can point the court to, and this is the First Circuit's decision in Walker, does not require an intent to deceive or defraud. And again, if I can, and then each of the cases we cited in our brief are similar to that effect. There are a number of cases. Even if her evidence is that I was told he was dead, I was told he was no longer living. And so when I put down none, I didn't have a husband. And my belief was this was true. It asks if you had a prior husband, not if you have a current husband. Have you previously been married? So dead or not, it doesn't matter. The answer has to be yes. So we'll get back to my original question. This, forget all the death penalty stuff and the death certificate and all that. This is just check the box, none. This is just, you signed a penalty on a perjury, signed a form under penalty. You don't need any more analysis than that. This is a very simple case. She checked none. None wasn't correct. She signed a document in the case. That's right. I think this- Don't even talk about death certificate. Don't even talk about bigamy. Don't talk about perjury. None of that stuff is totally not necessary from your perspective. That's what Judge Titus thought. That's what, this is basically this court's decision in citing in the context of a legal application for legal permanent- And it doesn't matter if she had evidence or some belief that what she was doing was innocent and she did not intend at all to defraud, didn't intend to give misinformation. None of that matters. That's correct. You sign that statement and there's an incorrect statement on it. If you don't buy that argument and you send this back, that sort of issue would be relevant to the question of, did she make false testimony under 11-01-6 or did she know that she was submitting a fraudulent death certificate? Those are all questions relevant to those factual findings, but it's not relevant to the strictly legal question. And this is really what the court has to decide. Is there an obligation when you sign a penalty of perjury, under penalty of perjury, an application to adjust status not to omit material facts? In deciding that, some of us may have a nagging doubt as to whether that is correct, but what deference, if any, do we owe to BIA's interpretation of that? That's Chevron deference. I would point out that every single court of appeals that has addressed that issue, and that's the first, the second, the third, the seventh, the eighth, the ninth, and the eleventh have accorded that deference and read it that way. On this issue? On the issue of whether to accord deference to the BIA's interpretation. I understand that. Deference is only when you have some level of expertise. Is this not a question of law? But this is the INA, right? This is the BIA exercising that legal expertise. I'm talking about in terms, if you're talking about perjury or intent and things of that nature, what is the deference that we give them? Tell me what the deference is. You defer to their legal interpretation. You would apply that standard here yourselves and say, what you need to decide, which the board did not decide, is there a substantive legal requirement under the immigration laws to not omit material information on forms you sign under penalty of perjury? That the board did not decide. That's your decision to make. And if you decide that in the affirmative for the government, that's the end of the case. If you decide, no, we don't buy that, there's a second basis to uphold the court, and that's that she was, in fact, at the time she married her second husband, a bigamist under Indian law, which renders her inadmissible at the time. It goes to, again, the declaration submitted by USCIS, says if we had known that information at the time, we would have denied her that benefit. What is the expertise the BIA is employing that we don't have insofar as Indian law? And I'm trying to understand the Chevron deference is definitely important. I understand that, but I mean, it's not a blanket to just say anything you say would give you deference on. It's something you have some specialized expertise in because you do this. They've said nothing about Indian law. That's for you to decide. What they have decided in the decision. Well, you said Chevron deference. That's what I'm trying to figure out. Chevron deference to the decision to the following statement of law. That's the following statement. I see my time is almost up, but let me just respond to that question and make one other point, that what you're giving Chevron deference to is this notion, that the notion is this. You are not lawfully admitted for permanent residence if you acquired that reverence by fraud, misrepresentation, or had otherwise, this is the operative language, otherwise not been entitled to it. And every court that has read that and a court of Chevron deference notes, it's not simply you were a court, you received a legal, your legal permanent residence, but all immigration law was followed in doing so. And that didn't happen here. If you decide that it's okay to omit material facts under penalty of perjury on the plaintiff's theory, then no. Then your court deference to that decision, but then you decide, no, we don't think she violated the substantive legal requirements. Just one point on the equities, which you argued about before, or my opponent argued with you about before. It's not true she can never apply again. She's not banned for life from applying. And that's not what the district court held. She can wait her five years. She can apply again. She can seek a waiver. There are many avenues she can take to get around this hurdle. For adjustment of status. For adjustment of status. And then afterwards, naturalization. Yes, it does restart the clock. I think what the appellant was getting at early in the argument was this finding by Judge Titus that the agency's going to grab hold of that, and the agency's five years down the road or 10 years down the road, the agency's going to come before another federal district judge and say, oh, no. This is sort of collateral estoppel, res judicata. Judge Titus has found that she can never prove her good moral. She did not actually find that. We can look at the record. I know, but they're going to interpret it that way. But you don't really care too much about that finding, right? No, you can affirm on any basis you want. It's a summary judgment at this point. If you don't like that finding, you affirm for a different basis. No, my point is, you're really relying more heavily on the legal issue that you've been discussing with us. Right. And I don't mean to suggest you don't care about anything that the district judge said, but it's almost in the nature of an alternative or supplemental finding. Judge Titus didn't have to go there. I guess is what I'm saying. Here is the finding. He really didn't have to get into whether she could prove her moral. He did not. And this is the finding he made. He didn't touch bigamy. What he said was signing that form on a penalty of perjury and omitting material information means you never got that LPR status to begin with, but it also means you committed an unlawful act barring you from eligibility. And you got to go back to the beginning. Right. You got to go back to the beginning, which 1999, 2001, when she lawfully accorded status to begin with. So you can affirm on that basis. You can affirm on the alternative basis that she was, in fact, a bigamist in 1991 under Indian law. None of the other factual findings that my opponents speak of are relevant right here today because intent is not the Indian law that you talk about. That was in the record. Yes, that's if that's a page. J.A. 354 to 355. That's an affidavit from the Law Library of Congress, which is normal practice in these sorts of cases to put a lot of who put all that Wikipedia stuff in the record. Some of that stuff is in the record because it was in the record below in case we have to go back. But the Wikipedia stuff came from USCIS. It was the point they were trying to make there is that Gujarat, where this individual allegedly passed away, is many, many thousands of miles away from where Mrs. Jetty is. Wikipedia has become your source of evidence? Not my source. You don't have to actually look at it if you don't want to because it's not relevant to the actual legal issue we've been talking about. You need to defend Wikipedia before this court. But if you'd like to learn more about it, Wikipedia is a good start. Oh, yeah. You can go and change whatever you want to in it. Anybody can. Well, I'm sure no one in this court today will go do that after the fact. But thank you. It's not a question of whether anyone, and seriously, businesses, because I'm increasingly seeing that Wikipedia is kind of a public source. There's no independent verification of it. There are ways in which you do it. But I don't want to argue that one way or the other. There's also evidence in the record. There's an interesting thing that someone would put Wikipedia in a record on appeal, and that's getting there. There's evidence from the CIA fact books as well. But I think if there are no further questions, thank you. Thank you very much, counsel. Mr. O'Toole, we'll be glad to hear from you further in rebuttal, sir. I would like one hour of rebuttal, please. Denied. Denied. There are two things, I think, that come to mind. First, Judge Davis, you said, where does this stop? The government put into evidence at 347 of the record what happens at the interview. There are the forms which all have been signed under the penalty of perjury. And the interview takes place in the government's exhibit where the person goes down each question and asks the question and says, do you want to make a change in this? And they change them. If there's a mistake, they change it. They cross it out, and they put something different in. Did that happen in this case? Yes. Oh, yeah. That's in the record. So Shelly Sweeney put in an affidavit saying, this is what I always do. I have an interview. I take the forms. If there's a mistake, I fix it. So where it stops, Judge, is it stops if the answer is a mistake is a mistake, and that's the end of the game, Sweeney would sit here, find one mistake that was signed under penalty of perjury, and say, done. You're finished. That's not what the government is saying. The government is saying. So the way the system is designed to operate, and I say this with all respect to you, certainly, and your firm, and immigration lawyers all over this country. Lawyers get to be as sloppy as they choose. They get to fill out these forms. They get to permit the applicants to sign the forms under penalties of perjury in blank. And then they fill in the forms, and they use these computer programs that complete a box, because it's already in the computer, and rely on people like the good officer you're that the lawyer got wrong. All I can speak to you, Judge, is our firm, Mr. Rothfeld's been doing this for 35 years. The clients come in, thousands of clients. And that's part of your problem, isn't it? Never. Well, it's we have a lot of lawyers doing it, but this has never happened before in 35 years. So it's not like we regularly take a form, fill it out, and say, fill the form, pay your money, see you later at the hearing. That's not what happens. There's a long interview. Rothfeld took notes. He took notes that her first husband was dead. He put that in his notes. He put that in his affidavit at page 260. He put in there that I need to get the death certificate. And then when the form got made, either by him or probably by a machine of the paralegal, the wrong, a wrong thing was entered. Ms. Njeti, bless her heart, signed it. Seven years later, she goes to the, she files an N-400. The machine makes the same mistake. Files it, takes the same information. Without a human doing it, makes the same information, carries it through. A mistake is made again. That is signed. She goes to the interview with Sweeney, and she corrects it. And Rothfeld sees it as a mistake. He says, we've made a mistake. So they get all the information they can. They get an affidavit from the sister. They get an affidavit from the daughter saying, I thought my father was dead. We all think he's dead. He's dead. So it's not a matter of is he alive or is dead. No one's ever found he's dead. The government looked for two years. Njeti's dead. He was dead in 91. No one's seen him. His father told Ms. Njeti, your husband's dead. So she gets married. She meets somebody else in Qatar, and she gets married. And she submits her marriage certificate saying that I'm a widow. She has no intent of lying. There's no relevance to it. There's no materiality to it because of this reason. She came in on an employee visa. Bigamy, according to the law, is only a matter of inadmissibility if there's an intent to be a bigamist. There's no matter of record that Ms. Njeti intended to be anything but marrying somebody after her first husband died. So there's no evidence of bigamy on the record. There's no evidence of fraud on the record. There's no evidence that she intended to misfile this form. In fact, the opposite is true. In order to get to materiality, which the government, in a hail Mary, is trying to get the court to say this is a strict liability event. Strict liability. No mistakes are ever going to be allowed. Even if Rothwell comes forward and says, this is not her fault. We did this. Do you dispute counsel's representation that she can come back in five or six years? Absolutely. And why do you dispute that? Because if she's an LPR, just like you said it. If she's an LPR, it goes back to the beginning, and the judge does not find it. I go back to the beginning, and that's my finding, is that she was not admitted properly. I'm sorry. I didn't understand that answer to my question. The answer is, I'm sorry. Assuming she's not removed in the next six years, what would prevent her from seeking lawful permanent resident status in 2018? Two forms. Two forms with her signature under the penalty of perjury. Her G325 that says she had no previous marriages, and her N400 that says she has no previous marriages. Judge Titus found that she was not a lawful LPR. She was not lawfully admitted. And that's what I'm asking you, why can't she seek to become a lawful permanent resident in 2019? Because she will have been found to always have lied to gain an immigration benefit. And if we vacate or decline to affirm that finding, is your answer the same? Well, I think the answer is that if you remand this. No, no, I'm positing. Obviously, I have no idea how we're going to rule. But I'm positing, if we agree with Judge Titus on the legal question, the threshold legal question, and do not leave in place, just speaking hypothetically here, what you call his finding of her inability ever to establish a good moral character. Is there any reason in law or fact that she couldn't come back in 2019 or whenever and lawful permanent resident? I have to admit to your honor that I don't know what happens if you pick and choose what he did was right and what he did was wrong. We do that in every case. Well, whether then the Immigration Service will then take that and say she was, if you find that she was lawfully admitted, if you find that, that Judge Titus was wrong, she was actually lawfully admitted, then the only question becomes, does she have good moral character? I understand that, and I'm asking you to answer the question, what if we agree with Judge Titus on the legal question that she was not lawfully admitted? Then then how would you take it away? I guess I'm sorry. How would you then be vacating that finding if you agree with him that she was not lawfully admitted? Well, we can vacate the finding because it's unnecessary to our decision. No, it is necessary in order to find out whether she was in order to be naturalized. In order to be naturalized, you have to be lawfully admitted. We're going around in circles. My question is just not clear. It's my fault. I don't understand why she can't start over seeking lawful permanent resident status in 2019. I don't know the answer to it. I think she cannot. I've been told by my colleague who does immigration law in the firm that once the LPR label is on her, it's on her. I can't tell the court the answer to that. I don't think it matters even. I think I don't think it matters. I think what really matters is that the government is relying on cases. They rely on the Sattig case. The Sattig case in this unpublished case in this court was a criminal case. And in Sattig, he lied about his criminal past, intentionally lied. And he said, his lawyer told him that he should do that. So he went to the interview, and he lied, and he got caught. And then he got prosecuted, and he asked for a criminal jury instruction that says, do I have to volunteer the truth? And the court said, you don't. Yeah, you have to volunteer the truth. It's a different case altogether. Every single case they cite, everyone has intent or misrepresentation. Let me just finish the thought. And then they say, intent's not necessary. It really is a strict liability crime, a strict liability situation. To Judge Wynn's questions, he continued to say, yeah, that's right. That's right. You make a mistake, and you are one mistake and out, down and out. And that's not the law in any, any, he cites 15 circuits or five, five is only 11, but fights four circuits. That's not the law. There's no law that says one mistake down and out, period. This would be a new, this would be a, you would be making the first time anywhere that that decision is right. Thank you very much, Mr. O'Toole. Thank you. We really appreciate counsel's efforts on our behalf. All right, we'll come down and greet counsel and proceed immediately to our third and final case.
judges: Andre M. Davis, James A. Wynn Jr., Albert Diaz